IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAWRENCE TRULL,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )   Civil Action No. 3:08CV460-HEH
                                         )
FRANCIS D. SMOLKA, BRIAN W.              )
TANNER, and COUNTY OF HENRICO,           )
                                         )
        Defendants.                      )

MEMORANDUM OPINION
(Denying Plaintiff's Motion to Strike and
Granting Defendants' Motion to Dismiss in part)

This is a civil rights action brought against the County of Henrico and two of its

police officers. It is presently before the Court on Defendants' Motion to Dismiss

Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

filed on July 28, 2008, and Plaintiff's Motion to Strike, filed on August 8, 2008. Both

parties have filed extensive memoranda of law supporting their respective positions. The

Court will dispense with oral argument because the facts and legal contentions are

adequately presented in the materials before the Court, and argument would not aid in the

decisional process.

For the reasons stated herein, the Court will deny Plaintiff's Motion to Strike and

grant the Defendants' Motion to Dismiss in part. The Court will dismiss Counts 3 and 4

and Count 5 as it relates to the Defendants' entry into Plaintiff's bathroom by force. The

Court will deny the Motion to Dismiss as to Counts 1 and 2 and Count 5 with respect to the Defendants' alleged illegal restraint of Plaintiff.

## I.   BACKGROUND

On or about May 9, 2008, Plaintiff Lawrence W. Trull filed a Complaint in the Circuit Court for the County of Henrico, asserting both federal and state claims against the Defendants. The Defendants removed the case to this Court on July 21, 2008, based on the Court's federal question jurisdiction over Plaintiff's federal claims.

In his Complaint, Plaintiff alleges that, on or about May 13, 2006, he retreated to the bathroom in his home after an argument with his wife, Mary Ellen Picchi, "related to their marriage." (Compl., ¶ 9.) Picchi called the police to the home. (Compl., ¶ 10.) Defendants Smolka and Tanner, two Henrico County police officers, arrived at Plaintiff's home in response to Picchi's call, and, according to Plaintiff, "determined that no assault or domestic violence had occurred." (Compl., ¶ 11.) The officers entered the residence with Picchi's consent. (*See* Compl., ¶ 10; Pl.'s Resp. Br., at 15–16.) Smolka and Tanner announced their presence to Plaintiff and ordered him to exit the bathroom. (Compl., ¶ 12.) After Plaintiff refused to exit the bathroom, Smolka and Tanner used force to open the bathroom door. (Compl., ¶ 14.)

Plaintiff alleges that the bathroom door hit him, knocking him and his wheelchair "violently across the bathroom" and causing him "so much shock and fright that he urinated upon himself." (Compl., ¶ 14.) Plaintiff alleges that the shock and fright he

2

experienced caused him to have high blood pressure, shortness of breath, and tightness in his chest. (Compl., ¶ 14.)  Plaintiff also alleges that Smolka and Tanner illegally restrained him and forced him against his will to go to the hospital by ambulance so his heart could be examined, despite opinions by emergency medical technicians present that the tightness in Plaintiff's chest was related to anxiety rather than to any threat of a heart attack. (Compl., ¶¶ 16, 19.)

Plaintiff filed suit against Smolka, Tanner, and the County of Henrico, their employer.  He asserts that the Defendants are liable for violating his Fourth, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 because they illegally searched the bathroom he occupied, used excessive force to enter the bathroom, unlawfully restrained his freedom, and forced him to accompany medical technicians to the hospital for examination and treatment. (Compl., ¶¶ 53, 60, 64.)  He alleges that the County of Henrico is liable under § 1983 for failure to train Smolka and Tanner properly in the investigation of a domestic violence complaint. (Compl., ¶¶ 67–70.)  Plaintiff also asserts state-law claims of false imprisonment, assault and battery, and trespass against Defendants Smolka and Tanner and requests a declaratory judgment that the officers' actions violated the Virginia Constitution.

The Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In response, Plaintiff filed a brief in opposition to the Motion to Dismiss and also filed a Motion to Strike the Motion to Dismiss on the grounds that the

3

Defendants improperly raised the affirmative defense of qualified immunity in the Motion to Dismiss. Both motions have been fully briefed by the parties and are ripe for disposition.

## II.   ANALYSIS

### A.   Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint must have "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted). To withstand a motion to dismiss under Rule 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, and must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 1974. In considering a motion to dismiss under Rule 12(b)(6), the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Martin*, 980 F.2d at 952. But, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

4

**B.    Plaintiff's § 1983 Claims**

Although portions of the Complaint lack factual clarity, Plaintiff ostensibly states

three claims under 42 U.S.C. § 1983.  First, he asserts that Defendants Smolka and

Tanner violated his Fourth, Fifth, and Fourteenth Amendment rights by conducting an

illegal search of his bathroom without a warrant or his consent.  (Compl., ¶ 60.)  Second,

he contends that the Defendants violated his constitutional rights by using excessive force

to enter the bathroom.[1]  (Compl., ¶ 53.)  Third, he maintains that the Defendants violated

his constitutional rights by illegally restraining him and requiring him to be transported by

ambulance to the hospital for medical treatment.  (Compl., ¶ 16.)  In addition, Plaintiff

asserts a civil rights claim against the County of Henrico, the police officers' employer,

on the ground that the County failed to train Smolka and Tanner properly, which Plaintiff

alleges amounts to a "county policy" or "custom."  (Compl., ¶ 67.)

In response, Defendants filed their Motion to Dismiss under Rule 12(b)(6) of the

Federal Rules of Civil Procedure based, *inter alia*, on the affirmative defense of qualified

immunity.  Qualified immunity protects government officials, including police officers,

performing discretionary duties from civil liability unless their conduct "violate[s] clearly

established statutory or constitutional rights of which a reasonable person would have

---

[1]The Complaint could be read to assert only a claim of excessive force against Plaintiff's property arising out of the officers' use of force to open the bathroom door. (*See* Compl., ¶ 53.) Without deciding whether such property damage can form the basis of a constitutional claim, the Court will assume Plaintiff's excessive force claim arises from the alleged harm to him caused by Defendants' actions.  In fact, the Complaint lacks any allegation that Plaintiff's bathroom door suffered any damage from the officers' actions.

known." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). The defense provides *"immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and, contrary to Plaintiff's assertions, the Defendants may properly raise the defense of qualified immunity in their Motion to Dismiss. *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) ("Qualified immunity may be raised in a motion to dismiss."). Accordingly, the Court will deny Plaintiff's Motion to Strike and address Defendants' Motion to Dismiss on the merits.

   "[P]olice officers performing a discretionary function enjoy an immunity that shields them from liability for civil damages unless the officer's conduct violates a federal statutory or constitutional right, and the right was clearly established at the time of the conduct, such that an objectively reasonable officer would have understood that the conduct violated this right." *Milstead v. Kibler*, 243 F.3d 157, 161 (4th Cir. 2001) (clause numbering removed). A defendant raising the affirmative defense of qualified immunity must first establish that he was acting within the scope of his official duties. *In re Allen*, 106 F.3d 582, 593–94 (4th Cir. 1997). There is no dispute that Defendants Smolka and Tanner were acting within the scope of their duties as Henrico County police officers during their interaction with Plaintiff. The Court's first inquiry, therefore, is whether, viewing the facts in the light most favorable to Plaintiff, a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Only if a constitutional violation has been established does the Court proceed to determine whether qualified immunity

6

protects the Defendants from liability. *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).

In Count 5 of his Complaint, Plaintiff alleges that the Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights. The Fifth Amendment in this context protects an individual from being compelled to become a witness against himself. To be applicable, Plaintiff must allege that the Defendants' conduct forced him to make incriminating statements to the officers, which were used in a criminal proceeding against him. *Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997) (en banc). In his Complaint, Plaintiff fails to allege that he made any incriminating statements to Defendants Smolka or Tanner whatsoever, much less that any statement was used against him in a criminal proceeding. Accordingly, Plaintiff fails to state a claim for which relief may be granted under the Fifth Amendment. *Id. at* 1166.

The Court will turn next to Plaintiff's Fourth Amendment claim. The Fourth Amendment applies to civil rights claims arising during the course of an arrest, investigatory stop, or any other seizure, *Carr*, 453 F.3d at 600, and is implicated in unreasonable searches of areas in which a person has a legitimate expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

### 1.   Entry into Plaintiff's Bathroom

Plaintiff bases his Fourth Amendment claim on the United States Supreme Court's ruling in *Georgia v. Randolph*, 547 U.S. 103 (2006), in which the Court held that "a

7

warrantless search of a shared dwelling for evidence over the express refusal of consent

by a physically present resident cannot be justified as reasonable as to him on the basis of

consent given to the police by another resident." *Id.* at 120. Plaintiff asserts that, under

*Randolph*, Defendants Smolka and Tanner acted unreasonably by unlawfully entering and

searching the bathroom he occupied without his consent or a warrant. (Compl., ¶ 55–60.)

Plaintiff misconstrues the holding in *Randolph*.

In *Randolph*, the Court explicitly distinguished a search for evidence from a

situation in which police officers are exercising their caretaker function to protect a

potential victim from violence. *Id.* at 118. The Court further observed that "it would be

silly to suggest that the police would commit a tort by entering [a dwelling] . . . to

determine whether violence (or threat of violence) has just occurred or is about to (or

soon will) occur, *however much a spouse or other co-tenant objected. Id.* (emphasis

added). Contrary to Plaintiff's contention, the holding in *Randolph* places no limitation

on the ability of police to enter a dwelling with the consent of one resident to provide

protection to victims of possible domestic violence, even in the face of an objection by a

co-resident. *Id.* at 118.

Accepting Plaintiff's allegations as true and construing all inferences in his favor,

the Court finds that the Complaint fails to allege a constitutional violation by Defendants

Smolka or Tanner as a matter of law with respect to their entry into the Plaintiff's

bathroom. The officers arrived at Plaintiff's home to find Picchi, who gave them consent

8

to enter the home, and Plaintiff locked in the bathroom. Having responded to Picchi's call for police assistance in connection with an argument related to their marriage, the officers were therefore obligated by statute to determine whether all present were safe, whether Picchi or Plaintiff were victims of domestic violence, and whether one was a predominant physical aggressor. Va. Code Ann. § 19.2-81.3; *see Randolph*, 547 U.S. at 118.

It is a logical inference that Plaintiff's refusal to follow the officer's instructions and exit the bathroom left the officers with no other option but to open the bathroom door to examine Plaintiff for injuries and to ensure the safety of all present. *Figg v. Schroeder*, 312 F.3d 625, 639 (4th Cir. 2002) (finding that thirty-minute, warrantless detentions of individuals present at crime scene was reasonable to ensure officers' safety during investigation of possible crime). The relevant inquiry is "whether the officers acted reasonably upon the reports *available to them* and whether *they* undertook an objectively reasonable investigation with respect to that information in light of the exigent circumstances *they faced*." *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 786 (4th Cir. 1998). It is obvious from the Complaint that the officers could not see Plaintiff behind the closed bathroom door and that, for some unapparent reason, he refused to present himself. The officers' duty to determine if a crime of violence had occurred and to ascertain whether Plaintiff posed a danger to their safety justified the officers' entry into Plaintiff's bathroom to address him directly.

9

An essential ingredient of a viable civil rights claim is a statutory or constitutional violation. A careful reading of Count 5, as it pertains to the officers' entry into Plaintiff's bathroom, yields none. It is therefore unnecessary for the Court to address whether Defendants are entitled to qualified immunity on this element of Count 5.

## 2.    Plaintiff's Excessive Force Claim

Plaintiff next alleges that the use of force by Defendants Smolka and Tanner to open the bathroom door was excessive. (Compl., ¶ 53.) Presumably, this claim is predicated on the door striking Plaintiff's wheelchair. In deciding whether a police officer is entitled to qualified immunity in excessive force cases, the Court employs an objective standard to determine whether they acted reasonably under the circumstances they confronted. *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). In determining whether the officers acted reasonably, the Court must avoid using hindsight and must place the officer in the context confronting him at the time of the incident. *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005). The calculus "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Contrary to Plaintiff's allegations, the Court finds the officers' use of force to open the bathroom door, as alleged in the Complaint, was reasonable and justified in light of the circumstances they faced, and Plaintiff has failed to state an excessive force claim as a

10

matter of law. *See Schultz v. Braga*, 455 F.3d 470, 477 (4th Cir. 2006) (stating that an

officers' use of force is not excessive if it is objectively reasonable in light of the

circumstances facing him irrespective of his intent or motivation). After receiving

consent to enter the premises from Picchi and suspecting domestic strife, the officers

were obligated to observe and question Plaintiff to dispel their suspicions and to fulfill

their statutory obligation to ensure the safety of Plaintiff, Picchi, and themselves. *See* Va.

Code Ann. § 19.2-81.3(B); *Figg*, 312 F.3d at 639. Obviously, this could not be

accomplished behind a closed door.

      Plaintiff cites no authority supporting his contention that opening a door

constitutes excessive force, especially when entry appears justified by the circumstances

at hand. In fact, the weight of authority is to the contrary. Reviewing courts have held

that striking a person while opening a door does not constitute excessive force. *See, e.g.,*

*Chandler v. Rodriguez*, 74 Fed. Appx. 1, 3 (10th Cir. 2003) (finding that prison guard

opening cell door, which hit praying inmate in head, did not constitute excessive force

because guard was investigating whether inmate engaged in improper conduct); *Thomas*

*v. Ivezaj*, 1997 U.S. App. LEXIS 32347, at *9 (6th Cir. 1997) (finding as a matter of law

that pushing open a door does not constitute excessive force). Moreover, Plaintiff has

failed to allege more than a de minimis injury as required by the Fourth Amendment. *See*

*Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (finding claim that handcuffs

were too tight was too insubstantial to state a claim of excessive force under the Fourth

Amendment).

The Complaint concedes that Plaintiff was avoiding contact with the officers. There is no allegation that the officers acted maliciously in forcibly entering the bathroom or that they intended to injury Plaintiff in any way. Not every incidental injury occasioned by police action elevates a simple tort to a constitutional claim. *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law."). The facts alleged in this case are no exception. The Court will dismiss those portions of Count 5 that allege unlawful entry and excessive force for failure to state a claim for which relief may be granted.

### 3.   Alleged illegal restraint of Plaintiff and Plaintiff's ambulance ride to hospital

Although the Complaint is conspicuously lean on details, Plaintiff also asserts that he was illegally restrained by Defendants Smolka and Tanner, who required him to exit his home and ride in an ambulance to the hospital against his will. (Compl., ¶¶ 16, 19, 64–65.) A "seizure" as contemplated by the Fourth Amendment occurs "'when there is a governmental termination of freedom of movement through means intentionally applied.'" *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989)); *see also California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a Fourth Amendment seizure occurs upon (1) a show of authority and (2) submission to that show of authority).

12

Accepting Plaintiff's allegations as true and construing all inferences in his favor, the Court must find that Plaintiff has sufficiently, but narrowly, alleged a constitutional violation. Plaintiff alleges that Defendants Smolka and Tanner forced him to exit his home and ride in an ambulance to the hospital against his will without probable cause, medical necessity, or other legal excuse. If true, the Complaint's factual allegations make Plaintiff's claim for relief at least plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).

A constitutional violation having been sufficiently alleged, the Court must determine whether the right violated was clearly established and whether a reasonable person in the officers' position would have known that his or her actions violated that right. *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996); *see also Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). The Defendants bear the burden of proving that they are entitled to qualified immunity. *Henry*, 501 F.3d at 378. The Court's review under Rule 12(b)(6), however, is limited to the allegations in the Complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

From the Complaint, the Court lacks the requisite facts and circumstances surrounding Plaintiff's alleged detention to make these additional determinations at this stage. The Defendants' claim of qualified immunity must abide the development of a more complete record. Therefore, in construing all inferences in favor of Plaintiff, the Court will deny the Defendants' Motion as it relates to the alleged illegal restraint of

13

Plaintiff and his transport to the hospital.

**C.     Plaintiff's State-Law Claims**

Plaintiff asserts numerous state-law claims against Defendants Smolka and Tanner.

Plaintiff has withdrawn any alleged state-law claims against the County of Henrico. (Pl.'s

Resp. Br., at 29.)  Plaintiff's state-law claims against Defendants Smolka and Tanner

include false imprisonment, assault and battery, and trespass.  Plaintiff also seeks a

declaratory judgment stating that the officers' conduct violated the Virginia Constitution.

The Court will address each of these claims in turn.

**1.     False Imprisonment**

In Count 1 of the Complaint, Plaintiff alleges that Defendants Smolka and Tanner

falsely imprisoned him by acting intentionally to restrict his freedom of movement

without legal right. (Compl., ¶¶ 33–34.)  As mentioned above, the Complaint is sparse on

details, but Plaintiff alleges that the officers illegally detained him after they entered the

bathroom he occupied and forced him to exit his home and ride to the hospital in an

ambulance. (Compl., ¶ 19.)

Under Virginia law, false imprisonment is defined as the restraint of a person's

liberty without sufficient cause. *Zayre of Va, Inc. v. Gowdy*, 207 Va. 47, 50, 147 S.E.2d

710, 713 (1966).  "If a person is under a reasonable apprehension that force will be used

unless he willingly submits, and he does submit to the extent that he is denied freedom of

action, this, in legal contemplation, constitutes false imprisonment." *Id.*

14

Plaintiff alleges that the Defendants required him to exit his home and ride to the hospital in an ambulance. (Compl., ¶ 16.) He also alleges that he was afraid to disregard the Defendants' "words, acts and/or threats." (Compl., ¶ 22.)   Accepting the allegations as true and construing all inferences in Plaintiff's favor, the Court is compelled to find that the Complaint, although scant, sufficiently states a claim for false imprisonment against Defendants Smolka and Tanner.

Defendants counter that they cannot be held liable for false imprisonment because they acted lawfully under Virginia law—an affirmative defense. (Defs.' Mem. in Support, at 23.) To survive dismissal under Rule 12(b)(6), Plaintiff must merely allege that he was unlawfully detained; under Virginia law, the defendant bears the burden of proving an adequate justification for the detention. *Figg v. Schroeder*, 312 F.3d 625, 642 (4th Cir. 2002). Plaintiff sufficiently stated a claim that the officers illegally restricted his freedom and transported him to the hospital against his will.  To assess the validity of an affirmative defense is beyond the scope of Rule 12(b)(6) review, which is confined to a determination of the facial sufficiency of the Complaint.  Because Plaintiff has stated at least a sufficiently plausible claim of false imprisonment to survive dismissal under Rule 12(b)(6), *see Twombly*, 127 S. Ct. at 1964, the Court will deny Defendants' Motion as it relates to Count 1 of the Complaint.

2.      **Assault and Battery**

In Count 2 of the Complaint, Plaintiff seeks damages from Defendants Smolka and

Tanner for assault and battery.  Specifically, Plaintiff alleges that he told the officers that

he preferred to stay in the bathroom and that he was in a wheelchair, which blocked the

door from being opened.  (Compl., ¶ 13.)  Plaintiff maintains that the officers' forcefully

opened the door to the bathroom, which knocked him and his wheelchair "violently

across the bathroom," shocking and frightening him.  (Compl., ¶ 14.)  Plaintiff also

alleges that the officers then "screamed" at him to put his hands up and move.  (Compl., ¶

15.)  He was then directed to exit his home against his will and forced to ride to the

hospital in an ambulance.  (Compl., ¶ 16.)

Under Virginia law, an assault is defined as  "an attempt or offer, with force or

violence, to do some bodily hurt to another, whether from wantonness or malice, by

means calculated to produce the end if carried into execution."  *Harper v.*

*Commonwealth*, 196 Va. 723, 733, 85 S.E. 249, 255 (1955).  A battery is defined as a

non-consensual touching of another, however slight.  *Pugsley v. Privette*, 220 Va. 892,

899, 263 S.E.2d 69, 74 (1980) (citing *Crosswhite v. Barnes*, 135 Va. 471, 477, 124 S.E.

242, 244 (1924)).

The Complaint is admittedly skeletal, but, accepting Plaintiff's allegations as true

and construing all inferences in his favor, the Court finds that the factual allegations in

the Complaint sufficiently state a claim for assault and battery to survive a Rule 12(b)(6)

challenge.  As with Plaintiff's false imprisonment claim, Defendants rejoin that they

cannot be held liable for assault and battery because they acted lawfully under Virginia

16

law. (Defs.' Mem. in Support, at 23.)  But, as stated above, at this juncture the Court

cannot engage in this type of fact-finding to weigh the merits of an affirmative defense.

Therefore, the Court will deny Defendants' Motion as it relates to Count 2 of the

Complaint.

### 3.    Trespass

In Count 3 of the Complaint, Plaintiff maintains that Defendants Smolka and

Tanner committed actionable trespass by entering the bathroom he occupied without any

legal authority or consent. (Compl., ¶ 41.)  Under Virginia law, a trespass is defined as

the "*unauthorized* entry onto property that results in interference with the property

owner's property interest." *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406

(1994) (emphasis added).  The facts alleged in the Complaint fail to support a claim of

trespass.

Accepting Plaintiff's allegations as true, Defendants Smolka and Tanner entered

Plaintiff's property after receiving consent from Picchi, who had called them to the home

after an argument related to the couple's marriage. (Compl., ¶¶ 9–11.)  Thus, their entry

onto the property was not unauthorized as required for a claim of trespass, but was made

pursuant to Picchi's consent. *See Cooper*, 248 Va. at 423, 448 S.E.2d at 406.  Once they

entered the property, the officers confronted a possible domestic violence situation, which

they were obligated to investigate. *Georgia v. Randolph*, 547 U.S. 103, 118 (2006)

(stating that police do not commit a trespass when entering a dwelling with consent of

one tenant to investigate possible crime of violence even in face of objection by co-tenant); *see also* Va. Code Ann. § 19.2-81.3. The officers were authorized to be on Plaintiff's property and cannot, as a matter of law, be held liable for trespass. Accordingly, the Court will grant the Defendants' Motion and dismiss Count 3 of the Complaint.

### 4.    Declaratory Judgment

In Count 4 of the Complaint, Plaintiff requests a declaratory judgment that the conduct of Defendants' Smolka and Tanner violated the Virginia Constitution. Specifically, Plaintiff maintains that the officers' conduct violated his rights to be free from unreasonable searches and due process as guaranteed by Article I, Sections 10 and 11 of the Virginia Constitution. Declaratory judgment, however, is not a remedy available to Plaintiff in this case because it is designed to apply prospectively to prevent or mandate reasonably certain, future conduct. *Am. Nat'l Bank & Trust Co. v. Kushner*, 162 Va. 378, 386, 174 S.E. 777, 780 (1934); *see also MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240–41 (1937)) (stating that the remedy created by the federal Declaratory Judgment Act applies only to justiciable controversies that are "definite and concrete," not "hypothetical," "academic or moot"). Thus, a declaratory judgment is unavailable in situations where, as in this case, "claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Bd. of Supervisors v. Hylton Enters.*, 216

18

Va. 582, 585, 221 S.E.2d 534, 537 (1976).

The wrongs alleged in the Complaint occurred on or about May 13, 2006, and Plaintiff suffered the alleged harm at that time. His claims against Defendants Smolka and Tanner have fully matured, and declaratory judgment is inappropriate in this case. Plaintiff's contention that he fears that Defendants Smolka and Tanner "may again violate his Fourth Amendment rights should they again be invited into a residence while he is sequestered in the bathroom," (Pl.'s Resp. Br., at 24,) fails to animate his claim. In Count 4, Plaintiff failed to state a claim for which relief may be granted. Therefore, the Court will grant Defendants' Motion and dismiss Count 4 of the Complaint.

### III.   CONCLUSION

In the final analysis, the Court will deny Plaintiff's Motion to Strike. The Court will grant Defendants' Motion to Dismiss in part, dismissing Counts 3 and 4 and Count 5 as it relates to the Defendants' alleged entry into Plaintiff's bathroom and to Plaintiff's excessive force claim. The Court will deny the Motion to Dismiss as to Counts 1 and 2 and Count 5 as it relates to the Defendants' alleged illegal restraint and transport of Plaintiff to the hospital.

An appropriate Order will accompany this Memorandum Opinion.

                                        /s/
                                _____
                                Henry E. Hudson
                                United States District Judge

ENTERED this 18th day of Sept 2008.
Richmond, VA

19