IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAWRENCE TRULL,            )
                           )
    Plaintiff,             )
                           )
v.                         ) Civil Action No. 3:08CV460-HEH
                           )
FRANCIS D. SMOLKA, BRIAN W.)
TANNER, and COUNTY OF HENRICO, )
                           )
    Defendants.            )

## MEMORANDUM OPINION
(Granting Defendants' Motion for Summary Judgment)

This is a civil rights action brought against the County of Henrico, Virginia, and two of its police officers. It is presently before the Court on Defendants' Motion for Summary Judgment, filed on December 22, 2008. Both parties have filed extensive memoranda of law supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Court will grant the Motion, and the case will be dismissed.

## I. BACKGROUND

On May 13, 2006, Plaintiff and his wife at the time, Mary Ellen Picchi ("Picchi") resided at 5403 Ridgedale Drive in Glen Allen, Virginia. Plaintiff and Picchi had an argument concerning their marriage, which led Picchi to place a 911 call, alleging that Plaintiff threatened to remove her from their home. Defendants Francis D. Smolka

("Smolka") and Brian W. Tanner ("Tanner"), two Henrico County police officers, responded to the 911 call. When both of the officers arrived at the scene, in uniform and driving marked police units, they knocked on the front door, which was answered by Picchi. Picchi immediately invited the officers into the residence. Picchi told the officers that Plaintiff had locked himself in the main hallway bathroom. She also told officers that Plaintiff kept a firearm in the house, but she did not know where it was located.

At that point, Tanner began to look for the firearm with Picchi's consent. He first looked in the living room area of the house before looking in the back bedroom, where Picchi said the firearm may be located. Tanner, however, was unable to locate the firearm. Meanwhile, Smolka knocked on the bathroom door and asked Plaintiff to exit the bathroom. Plaintiff refused to exit the bathroom and told the officers that he was in a wheelchair. Eventually, the officers applied some amount of force to open the bathroom door to gain access to Plaintiff.[1] As the door was opening, it came into contact with Plaintiff's wheelchair and leg. Plaintiff exited the bathroom and moved to the home's kitchen area either of his own volition or in compliance with the officers' instructions.

While exiting the bathroom or shortly after arriving in the kitchen, Plaintiff told the officers that he was experiencing chest pains or tightness. Smolka requested paramedics to come to the home to treat Plaintiff at approximately 7:50 p.m. At

---

[1] The record is unclear as to how much force the officers applied to open the door. Some testimony suggests that Plaintiff unlocked and partially opened the door to allow the officers access. In its Order dated September 18, 2008, the Court ruled that any force used by officers to enter the bathroom did not violate Plaintiff's constitutional rights.

approximately 7:55 p.m., paramedics arrived at Plaintiff's residence. At about the same time, Plaintiff's daughter, Leslie Trull, and her boyfriend, Thomas Lawson ("Lawson"), arrived at the home.

Initially, Plaintiff informed the paramedics that he did not want to go the hospital. Leslie Trull, a nurse, advised the paramedics that she thought Plaintiff needed to go to the hospital. Smolka made a similar recommendation to the paramedics. After speaking with Leslie Trull and Smolka, the paramedics encouraged Plaintiff to go to the hospital. At no time, however, did the officers order or direct Plaintiff to go to the hospital. Finally, when one of the paramedics approached him, Plaintiff voluntarily took the paramedic's arm so he could be transferred to a stretcher. Other than his initial statement, no other evidence exists that Plaintiff resisted the paramedics' efforts to transport him to the hospital.

The paramedics took Plaintiff to St. Mary's Hospital in Richmond, Virginia. Plaintiff was accompanied in the ambulance by his daughter. Neither Smolka nor Tanner accompanied Plaintiff to the hospital nor appeared there. After spending some time at the hospital, Plaintiff checked himself out and departed.

Plaintiff filed his Complaint against Defendants on or about May 9, 2008, asserting federal claims under 42 U.S.C. § 1983 and claims of assault and battery, trespass, and false imprisonment under Virginia law and seeking declaratory relief. The case was removed to this Court on July 21, 2008. Defendants filed a Motion to Dismiss pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the Court granted in part. The Court ruled that Plaintiff failed to allege a constitutional violation under 42 U.S.C. § 1983, as it related to the officers' entry into the bathroom, and failed to state a claim for trespass under Virginia law. The Court also dismissed Plaintiff's request for declaratory relief. Defendants now request summary judgment as to Plaintiff's remaining § 1983 claims and his claims of assault and battery and false imprisonment.

## II. ANALYSIS

### A. Standard of Review

When evaluating a motion for partial summary judgment under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted). A court will grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).

### B. Plaintiff's Remaining § 1983 Claims

"[P]olice officers performing a discretionary function enjoy an immunity that shields them from liability for civil damages unless the officer's conduct violates a federal statutory or constitutional right, and the right was clearly established at the time of the conduct, such that an objectively reasonable officer would have understood that the conduct violated this right." *Milstead v. Kibler*, 243 F.3d 157, 161 (4th Cir. 2001) (clause numbering removed). As the officers were clearly acting within the scope of their official duties, the Court's first inquiry is whether, viewing the facts in the light most favorable to Plaintiff, a constitutional violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). On close review of the evidence, in the light most favorable to Plaintiff, the Court finds none.

Officers Smolka and Tanner arrived at Plaintiff's home to investigate a 911 call notifying police of a domestic dispute. The officers entered the residence with Picchi's consent. The officers lawfully entered the bathroom occupied by Plaintiff as part of their investigation. Any restriction of Plaintiff's movement after exiting the bathroom was reasonable and justified pending the outcome of their investigation. This obviously included an interview of Plaintiff to ascertain what had occurred. Also, when Plaintiff exited the bathroom, the officers had still not located the firearm reported by Picchi. Given the nature of the call, the officers were obligated to investigate further in an effort

5

to locate the firearm to protect themselves and others present.

If any restriction on Plaintiff's movement rose to the level of an investigative detention, it was momentary. Plaintiff told the officers he was experiencing chest pains or tightness as he was exiting the bathroom or shortly after he arrived in the kitchen. Officer Smolka immediately summoned paramedics to examine Plaintiff. They responded within minutes and began attending to Plaintiff. When Leslie Trull and Lawson arrived, they were allowed speak with Plaintiff. Plaintiff made no attempt to leave the kitchen.

Plaintiff was neither ordered to go to the hospital nor informed that he would be subject to arrest if he refused. In fact, the officers made no direct statements whatsoever to Plaintiff about his need to go to the hospital; Smolka simply told one of the paramedics, within earshot of Plaintiff, that he thought Plaintiff should go to the hospital.

This evidence is clearly insufficient to state a constitutional violation. A seizure as contemplated by the Fourth Amendment occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). The Court finds that any "seizure" of Plaintiff upon his exit from the bathroom was lawful and proper because the officers were still in the midst of a continuing criminal investigation of a potentially volatile domestic dispute and attempting to locate the firearm Plaintiff kept in the home.[2] *Figg v. Schroeder*, 312

---

[2] While the paramedics were attending to Plaintiff, Smolka located the firearm in a closet in the home's front bedroom. He determined it was unloaded and returned it to the closet.

6

F.3d 625, 639 (4th Cir. 2002) (finding that thirty-minute, warrantless detentions of individuals present at crime scene was reasonable to ensure officers' safety during investigation of possible crime). Plaintiff offers no evidence to support his contention that he was illegally restrained by Smolka and Tanner when he was transported to the hospital. Neither Smolka nor Tanner ordered Plaintiff to go to the hospital or directed the paramedics to transport him. To the contrary, the record shows that Plaintiff voluntarily accompanied the paramedics to the hospital.

The actions of Smolka and Tanner were reasonable and intended to protect Plaintiff's interests. Finding no constitutional violation on their part, the Court need not determine whether qualified immunity shields Smolka and Tanner from liability. *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2000). The officers are entitled to summary judgment.

Likewise, the County of Henrico is also entitled to summary judgment because a governmental employer may not be held liable under § 1983 if there is no underlying constitutional violation by an employee. *Id.* at 579. Accordingly, the Court will grant Defendants' Motion as to Plaintiff's remaining civil rights claims.

C. **Assault and Battery**

Under Virginia law, an assault is defined as "an attempt or offer, with force or violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution." *Harper v.*

7

*Commonwealth*, 196 Va. 723, 733, 85 S.E. 249, 255 (1955). A battery is defined as a non-consensual touching of another, however slight. *Pugsley v. Privette*, 220 Va. 892, 899, 263 S.E.2d 69, 74 (1980) (citing *Crosswhite v. Barnes*, 135 Va. 471, 477, 124 S.E. 242, 244 (1924)).

Plaintiff's assault and battery claim arises entirely out of the bathroom door coming into contact with his wheelchair and leg when the officers were gaining entry to the bathroom. As noted, the officers were lawfully entitled to enter the bathroom after Plaintiff refused to exit, and any force they applied to gain entry to the bathroom was reasonable and justified in light of the circumstances they faced. Thus, Defendants are entitled to summary judgment. *See Dechene v. Smallwood*, 226 Va. 475, 481, 311 S.E.2d 749, 752 (1984) (stating that a lawful seizure by police cannot form basis for assault and battery claim). Accordingly, the Court will grant Defendants' Motion as to Plaintiff's assault and battery claim.

D. **False Imprisonment**

Under Virginia law, false imprisonment is defined as the restraint of a person's liberty without sufficient cause. *Zayre v. Va, Inc. v. Gowdy*, 207 Va. 47, 50, 147 S.E.2d 710, 713 (1966). Assuming that the officers restrained Plaintiff's freedom after he exited the bathroom, the officers had sufficient cause in this case to do so. The officer's obligation to continue their investigation of a possible domestic dispute and their compelling interest to locate the firearm Plaintiff kept in the residence warranted any

detention of Plaintiff. Further, as the Court already ruled, the officers did not force Plaintiff to exit his home or go to the hospital. Thus, the Court will grant Defendants' Motion as to Plaintiff's false imprisonment claim.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment, and the case will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this 14th day of Jan. 2009.
Richmond, VA

9